IRA COGSWELL, Administrator of the Estate of FRANKLIN COGSWELL, Deceased, Appellant, v. THE OREGON AND CALIFORNIA RAILROAD COMPANY, Respondents.

Nonsuit—Should be Granted when the Evidence will not Sustain a Verdict.—Where the evidence produced by the plaintiff in a case is not sufficient to sustain a verdict, it is proper for the court to order a nonsuit on the motion of the defendant.

Negligence—Railroad not Required to Stop, when.—Managers of a train are not bound to apply the brakes in time to stop the train before it would reach a man seen walking on the track, apparently in possession of his ordinary faculties. The managers of a railroad train (running on the track), seeing a person walking laterally along the track, may reasonably suppose that he will get out of the way of the train on sounding the alarm.

Gross Negligence—Injured Person Guilty of, in what Case.—It is gross negligence for one who is deaf to walk laterally along the track of a railroad where trains are liable to pass.

Appeal from Multnomah County.

This action was brought to recover five thousand dollars for injuries to Franklin Cogswell, caused by respondent's railroad engine and tender, while he was walking upon the latter's track.

This appeal is from a judgment of nonsuit, granted upon the motion of the respondent, after the appellant had rested his case in the court below.

Additional facts are stated in the opinion of the court.

*William Strong and T. R. Strong,* for appellant:

Section 243, subdivision 3, and section 244, of the civil code, provide that a nonsuit may be granted on motion of the defendant, "when upon the trial the plaintiff fails to to prove a cause sufficient to be submitted to the jury." "A cause sufficient to the jury, is one where it appears that, if the jury were to find a verdict for the plaintiff, * * * the court ought, if required, to set it aside for want of evidence to support it."

The court will notice the language of this statute. It is not to be set aside because there is a lack of sufficient evi-

dence to support it, but for want of evidence. It does not leave the court to determine the sufficiency of the evidence as in the case of a motion for a new trial (sec. 232, subd. 6); but impliedly requires the motion for a nonsuit, if there is any evidence tending to prove the issue, to be overruled. This view is supported by the provisions of section 835, code of civil practice. This question must also be considered with reference to the situation of the parties and their power to produce evidence upon points where the evidence of the plaintiff fails to be as full or definite as might be desired. By a motion for a nonsuit the defendant admits that it cannot explain any circumstance against it, left doubtful by the evidence for the plaintiff. For instance, the engineer upon the locomotive ought to be able to tell the rate at which he was running; whether he could have seen the man; whether he did see him; whether he rung his bell, blew his whistle or made any effort to stop the train.

The failure to produce such witness, leaves the feeble evidence of the plaintiff to go to the jury, under subdivisions 4 and 5 of sections 766, civil code, with all the force of the most positive testimony. Where there is any evidence, however weak, tending to establish a material question in the case, it is error for the court to instruct the jury that there is no evidence. So, if there is any conflict in the evidence, upon a material point, the court may (must) refuse a general charge in favor of either party, and a charge that the plaintiff must recover, when inferences of fact must be drawn, is erroneous. So, if the plaintiff offers evidence to prove his allegations, it is error for the court to instruct the jury that no evidence was offered which would warrant the jury in finding a verdict for the plaintiff. * * Such a charge, therefore, should never be given when there is any evidence which reasonably tends to establish the plaintiff's case. (Hillard on New Trials, chap. 11, sec. 37, p. 222; Proffatt on Jury Trials, sec. 355; 8 Wall, 243; 35 N. Y. 9, 35; 20 N. Y. 492; 1 E. D. Smith, 78.)

It was claimed by the defendant, in the argument upon the motion to nonsuit, that the plaintiff could not complain of the failure of the defendant to run his locomotive as re-

quired by the ordinance of East Portland, because the liability for a violation of the city ordinance was a matter to be settled by the city authorities and in which the traveling public had no interest. While some cases look this way, we believe the better doctrine to be that expressed in Sherman & Redfield on Neg., secs. 13a and 54a. The point is expressly ruled in *Jetter* v. *N. Y. and Harlem P. R. Co.*, 2 Keyes, 154.

It was also claimed, in the argument below, that the regulations of the defendant forbidding loose engines to be run between the car shops and East Portland depot at a rate of speed greater than six miles an hour, and requiring them to be run with great care, and the bell to be constantly rung in passing between those two places, are matters exclusively between the company and its subordinates and do not concern the public. Such an opinion, though supported by some authorities, is manifestly unsound, because: 1. No reason can be given for such regulations except that in the judgment of the officers of the company they are essential to the public safety, and the jury have a right to treat the failure of the defendant to exercise the care which it, by its regulations, admits is necessary for the public safety, as very strong, if not conclusive, evidence of gross negligence; 2. The presumption would be that the subordinates of the company conform to the regulations, and that the trains run in conformity with the regulations. The public see and know how locomotives are run and how the business is carried on, and it would make no difference whether or not it knows that the engineer is governed by regulations of the company or by a regard for the public safety only. Under the regulations, whether known or unknown to the public, a custom would grow up, which would be known to the public, and on which it would have a right to rely, and a sudden deviation from such custom or usuage, without notice to the public by which an injury was inflicted, will give a cause of action; and, 3. These regulations provide for nothing more than the common law requires. It is gross negligence not to exercise extraordinary care in running locomotives, particularly when not drawing regular trains,

through a city or where persons or property is liable to be upon the track.    (S. & R. on Neg., sec. 484; 34 N. Y. 22; 41 N. Y. 296; 10 Cush. 561; 2 Cush. 539; 42 Ill. 449; *Schmidt* v. *Chicago and N. W. R. R. Co.*; Ill. Supt. Ct. Chicago News, Nov. 17, 1877, p. 67.)

Our supreme court in the case of *Bequette* v. *The Peoples' Trans. Co.*, 2 Or. 200, decided that the absence of care on the part of the plaintiff, contributing to the injury, but not amounting to a want of ordinary care, will not excuse gross negligence in the defendant.    The same doctrine that gross negligence on the part of the defendant will excuse slight negligence on the part of plaintiff, has been announced as the rule, in other cases.    The doctrine laid down by Shearman & Redfield, in their work on "Negligence," seems to be better defined, though entirely consistent with the cases where the terms of gross negligence and slight negligence have been used.

Section 25.    "One who is injured by the mere negligence of another cannot recover at law or in equity any compensation for his injury, if he, by his own or his agent's ordinary negligence or willful wrong, proximately contributed to produce the injury of which he complains, so that but for his concurring and co-operating fault, the injury would not have happened to him, except where the more proximate cause of the injury is the omission of the other party, after becoming aware of the danger to which the former party is exposed, to use a proper decree of care to avoid injuring him."

This proposition is supported in all its points by numerous authorities, referred to in the notes.    (10 M. & W. 546; 4 Ind. 95; 9 Id. 397; 26 Id. 76; 3 Ohio St. 172; 2 Duval, Ky. 114; 43 Mo. 384; 38 Ala. N. S. 76; 19 Ill. 499; 18 N. Y. 248, Harris J.; 19 Conn. 566; 3 Allen, 176; 47 Penn. St. 300; 40 Cal. 76; S. & R. on Neg., sec 36; 5 Sneed, Tenn. 524; 21 Iowa, 102; 24 Vt. 487; 9 Allen, 545; *Toledo, etc. R. R. Co.* v. *O'Conner*, 77 Ill. 391; *St. Louis etc. R. R. Co.* v. *Mathias*, 50 Ind. 65; *Isabel* v. *Hannibal, etc. R. R. Co.*, 60 Mo. 475.)

Ordinarily negligence is a question for the jury.    There is no absolute rule as to what constitutes it.    Where there

is any testimony going to show negligence, it is a question for the jury. (S. & R. on Neg., sec. 11; 2 Red. on Railroads, sec. 177, subd. 11; 47 Penn. St. 300; 22 N. Y. 209; 28 Barb. 196; 5 McLean, 242; 21 Barb. 339; 20 Barb. 282; 54 N. Y. 31; 17 Ill. 509, 519; 22 Id. 264, 271; 67 Penn. St. 411; 40 Cal. 447; 28 Eng. L. and Eq. 48, 52, 55; 54 N. Y. 231; 5 Am. R. R. Rep. 455, 456, 462, 464; 4 Am. R. R. Rep. 516, 517, 518; 61 Penn. St. 58; 99 Mass. 164; 30 Md. 226; 52 Mo. 253; 44 N. Y. 430; 21 Ohio, 212; 100 Mass. 21; 4 Cent. Law Jour., No. 4, p. 83, 84; 69 Ill. 409; 79 Pa. St. 33.)

*Dolph, Bronaugh, Dolph & Simon*, for respondent:

The statute provides that a judgment of nonsuit may be given against the plaintiff in an action * * "When, upon the trial, the plaintiff fails to prove a cause sufficient to be submitted to the jury." (Code, p. 154, sec. 243.) To justify a recovery in this case, the testimony must show not only negligence on the part of respondent, causing the injuries complained of, but it must as necessarily show no lack of care on the part of appellant intestate, himself contributing to such injuries. (*Wilds* v. *H. R. R.* 29 N. Y. 315; *Galena R. R. Co.* v. *Jacobs*, 20 Ill. 478; *Wilcox* v. *Rome R. R.*, 39 N. Y. 358; *Baxter* v. *Troy R. R. Co.*, 41 N. Y. 502; *Havens* v. *Erie R. R. Co.*, Id. 296; *Chicago R. R. Co.* v. *Fears*, 53 Ill. 115; *Lafayette R. R. Co.* v. *Huffman*, 28 Ind. 287; *Slone* v. *Oregon City Manf'g Co.*, 4 Or. 53; *McGlyn* v. *Brodie*, 31 Cal. 376.)

And this care must be commensurate with the danger in which deceased had voluntarily placed himself, considering his own infirmities and all the circumstances under which the injuries complained of occurred. (Shearman on Neg., p. 33; *Cleaveland R. R. Co.* v. *Terry*, 8 Ohio, 570.) Appellant's intestate was a trespasser upon the railroad track of respondent. He went there, knowing the hazardous nature of the business for which the track was being used, and the great danger to which he thus exposed himself, and he was bound to use every precaution, every diligence, every care, against the possibility or probability of accident which

might happen to him there.    (*Finlayson* v. *C. B. & Q. R. R. Co.*, 1 Dillon, 583; *Pa. R. R. Co.* v. *Lewis*, 79 Pa. 33.) And where plaintiff's evidence discloses negligence on his part, contributing to the injury complained of, he will be nonsuited upon motion of defendant.    The negligence of defendant is the gist of the action, and the absence of negligence on the part of the plaintiff is equally important. (*Deyo* v. *N. Y. Central R. R. Co.*, 34 N. Y. 9; *Mackey* v. *Ives*, 27 Bar. 528; *McGlyn* v. *Brodie*, 31 Cal. 376; *Cleaveland C. & C. R. R. Co.* v. *Edgar H. Elliot*, 28 Ohio, 340.)    It is negligence for any person to cross a railroad track, even at a crossing of the highway, without first looking up and down the track to see that no train is approaching.    (*Arntz* v. *R. I. & P. R. R. Co.*, 34 Iowa, 153; *Gonzales* v. *Harlem R. R. Co.*, 38 N. Y. 440; *Wilcox* v. *Rome R. R.*, *supra.*)    And *a fortiori* to walk laterally along the track.    (*Poole* v. *N. C. R. R. Co.*, 8 Jones [N. C.], 340.)

Deceased was almost entirely destitute of the sense of hearing.    He was not crossing the railroad, nor upon the highway, neither at any usual place of crossing the track; but was walking along the track at a place where, by using his eyes, he could have seen the approaching train for a long distance before it reached him.    The injuries sustained were the result of his negligence, and for them appellant can not recover.    (*R. R. Co.* v. *Buckner*, 28 Ill. 299; *Evansville R. R.* v. *Lowdermiek*, 15 Ind. 120; *Payne* v. *C. R. I. & P. R. R. Co.*, 39 Iowa, 523.)

But independent of the negligence of appellant's intestate, which the testimony shows not only contributed to, but was the cause of the injury complained of, and which, as before submitted as a matter of law, is a bar to recovery in this case, even though respondent were also shown to have been negligent, or to have disregarded some statutory require- ment, we further submit that the testimony fails to show negligence on the part of respondent or its agents.    The person injured was a man thirty-six years of age, in the full vigor of mature manhood, yet possessed of all the activity of youth.    He was, to all appearances, and for all that re-

spondent's agents could know, in the full possession of his senses.

By the Court, Boise, J.:

The evidence in this case is all reported, and the only question for us to decide is whether there was a sufficient case proved by the plaintiff to be submitted to the jury—a case "not sufficient to be submitted to a jury, is one where it appears that if the jury were to find a verdict for the plaintiff, the court ought, if required to set it aside for want of evidence, to support it." (Civ. Code, sec. 244, p. 154.)

The circuit court having all this evidence before it, on the motion of respondent, ordered a nonsuit. This order must have been based on the ground that the plaintiff had failed to show any negligence on the part of the company, or that the deceased was guilty of any such contributory negligence as precluded a recovery, or on both these grounds. After carefully examining this case we find no proof of any negligence on the part of the respondent, unless it be that the engine was running at an unauthorized rate of speed, did not ring the bell or make sufficient effort to stop the train.

The evidence tends to show that in the opinion of witnesses the engine was running at the rate of fifteen or twenty miles an hour; these estimates are necessarily very uncertain. The directors of the company and the ordinance of the city required a less speed, and there was some evidence to show that the speed was above what was authorized, and above what travelers across the track had reason to expect, and therefore might increase the danger of accidents.

It seems also that the bell was not rung, or if rung the sound was not noticed by the witnesses, and this neglect was a breach of duty on the part of the company, who, in view of the danger of collisions from great speed of engines and very serious nature of such accidents, should exercise great care in giving the required signals of approaching trains. It is the duty of the managers of moving trains to stop them when approaching any apparent danger. In this case the evidence shows that the view of the track was unobstructed for three-fourths of a mile; and for aught that

appears, the engineer saw the deceased for that distance before he was struck; and had he supposed there was danger could have stopped the train. But we think he had a right to suppose that the deceased would observe the train by his senses, and that he was in no danger until the train was so near to him that he ought to be leaving the track to avoid it.

A person of ordinary activity can leave the track in less time than is required to stop the train, and if a person in his ordinary senses neglects to leave the track when the ordinary signals are given, he is guilty of such gross negligence as will preclude his right to recover for an injury occasioned by a collision, which by the exercise of ordinary care he could have avoided. (Sherman on Neg. 33; 60 Mo. 475; *Wilds* v. *H. R. R. Co.*, 29 N. Y. 315; *Galena R. R. Co.* v. *Jacobs*, 20 Ill. 478; *Baxter* v. *Troy R. R. Co.*, 41 N. Y. 502; *Chicago R. R. Co.* v. *Flarr*, 53 Ill. 115.)

In this case it is alleged in the answer, and shown by the evidence of the plaintiff, that the deceased was so deaf that he carried a slate to converse with persons whom he met, or with whom he had business. There is the evidence of his father, to the effect that he could hear a bell, and he says, on cross-examination, that the only time he observed him to come to the sound of a bell was when called to dinner by it, and he admits on cross-examination that at that time he was looking at the bell, and might have been induced to come to his dinner from seeing the bell rung, and not from hearing it. And from the evidence in this case it appears that unless he was very deaf he would have heard the whistle of the engine, and been warned of its approach in time to escape from the track, and we think that the evidence shows that his deafness was the proximate cause of the injury, and he being aware of this infirmity was guilty of gross negligence in being on the track as he was walking laterally along it. It was a position of great danger to one who could not hear, and shows recklessness in the deceased.

To establish the doctrine contended for by appellant that it was the duty of the engineer to apply the brakes in time to stop the train before it could have reached the deceased,

would render it necessary for trains to be stopped in all cases when persons are seen walking before them on the track, before coming within the distance over which a train must go in being stopped; this would be an impracticable rule, and we think that when a train is moving over the track at its ordinary speed (twenty miles an hour is not extraordinary), and a person is seen walking on the track apparently in the possession of his ordinary faculties, the engineer may justly suppose that he will get off the track on sounding an alarm that the train is coming; and under the evidence in this case, if the deceased has not been deaf, we think his remaining on the track was such gross negligence that no recovery could be had.

While those who operate railroads should be held to observe the utmost skill and care in running of trains, persons who go on or about the track must be held to extraordinary diligence in looking after their own safety, and become trespassers on the rights of the company when they obtrude themselves in the way of the free passage of trains, and in case of receiving injury will not be entitled to recover, unless in case of very grave negligence on the part of the company; and we think in this case, as shown by the pleadings and evidence, that had the circuit court submitted this case to a jury and a verdict been found for the plaintiff, it would have been the duty of the circuit court to have set the verdict aside on motion of the respondent.

The judgment of the court below will be affirmed.